UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NIPPON YUSEN KABUSHIKI KAISHA,

                                   Petitioner,

                  -v-

XCOAL ENERGY AND RESOURCES,

                                   Respondent.

---

25 Civ. 9310 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

This decision resolves an unopposed petition to compel arbitration of a maritime contract

dispute.  Petitioner Nippon Yusen Kabushiki Kaisha ("NYK"), a Japanese shipping company,

alleges that respondent XCoal Energy and Resources ("XCoal") failed to pay the balance of an

invoice for an international shipment of coal.  NYK states that it commenced arbitration,

pursuant to a contract provision, and followed up with XCoal multiple times, but did not receive

a response.  NYK initiated this action, in which XCoal has not appeared or responded.

For the following reasons, the Court grants the petition.

I.      **Background**[1]

        A.      **The Parties**

NYK is a foreign corporation with its principal place of business in Tokyo, Japan.  Dkt. 4

("Pet.") ¶ 1.  It owns the vessel M/V Cielo D'Europa ("Cielo").  *Id.*  XCoal is a foreign entity

with an office and place of business at 1 Energy Place, Lastrobe, Pennsylvania 15650.  *Id.*

---

[1] The Court draws this account from NYK's petition and accompanying exhibits, Dkt. 4; its
memorandum of law in support of the petition, Dkt. 12; and a declaration by Michael J. Dehart,
submitted on NYK's behalf, and accompanying exhibits, Dkt. 13.

**B.      The Contract and the Invoice Due Under It**

On or about October 24, 2024, NYK and XCoal entered into a charter party contract (the "contract") via a fixture sent by email.[2]  *Id.* ¶ 6; Dkt. 4-1 ("Fixture" or "fixture").  Under the contract, XCoal agreed to charter the Cielo from NYK to transport coal from Norfolk, Virginia to Tianjin, China.  Pet. ¶ 6.  The contract incorporated the terms of an earlier charter party agreement between the parties and its rider (together, the "YM Pacifico Agreement").  *Id.* ¶ 7; Dkts. 4-2 ("AMWELSH Charter Party"), 4-3 ("YM Pacifico Rider").  The YM Pacifico Agreement states:

> If any dispute or difference should arise under this Charter, same to be referred to three parties in the City of New York, one to be appointed by each of the parties hereto, the third by the two so chosen, and their decision, or that of any two of them, shall be final and binding, and this agreement may, for enforcing the same, be made a rule of Court.  Said three parties to be commercial shipping men.

AMWELSH Charter Party at 3 (emphases omitted).

Upon completion of the voyage, on February 19, 2025, NYK issued a final freight invoice to XCoal for $3,889,129.14—the total amount owed under the contract.  Pet. ¶ 9; Dkt. 4-4 ("Invoice" or "invoice").  The invoice reflected that XCoal had earlier remitted $3,581,433.57 to NYK as payment for the shipment, leaving $307,695.57 due under the contract.  Pet. ¶ 10; Invoice.  To date, XCoal has not sent this balance to NYK.

**C.      NYK's Attempts to Arbitrate**

On or about September 16, 2025, NYK commenced arbitration in New York, pursuant to the contract, by serving XCoal with a demand for arbitration.  Pet. ¶ 12; Dkt. 4-5 ("Demand").  On October 15 and 20, 2025, NYK's counsel followed up with XCoal via email.  Pet. ¶¶ 17, 20;

---

[2] In maritime transactions, a fixture is an established method of forming charter party agreements.  *See Great Circle Lines, Ltd. v. Matheson & Co.*, 681 F.2d 121, 125 (2d Cir. 1982); *Crystal Pool AS v. Trefin Tankers Ltd.*, No. 12 Civ. 9417, 2014 WL 1883506, at *2 (S.D.N.Y. May 9, 2014).

2

Dkts. 4-6 ("Oct. 15 Email"), 4-7 ("Oct. 20 Email").  The October 20 email stated that if XCoal did not nominate an arbitrator as required under the contract, NYK would move to compel arbitration, and seek all costs and fees associated with the litigation.  Oct. 20 Email at 1.  To date, XCoal has not responded to the Demand or to NYK's follow-up communications, and has not appointed an arbitrator or otherwise participated in arbitration regarding this dispute.  *See* Pet. ¶¶ 13, 16, 19, 22, 24.

> ### D.    This Litigation

On November 10, 2025, NYK filed the petition.  Dkt. 4.  On November 24, 2025, NYK served it on XCoal and, on December 1, 2025, filed proof of service.  Dkt. 8.  On December 17, 2025, the Court set a briefing schedule, under which XCoal's response was due January 9, 2026. Dkt. 9.  It also directed NYK to serve the order on XCoal and file proof of service by December 23, 2025, which NYK did.  Dkt. 10.  XCoal has not appeared in this case or responded.  On January 16, 2026, NYK filed a memorandum of law in support of its petition, a declaration, and supporting exhibits.  Dkts. 12–13.

## II.    Applicable Legal Standard

The Federal Arbitration Act ("FAA" or "Act") creates a body of federal substantive law establishing and governing the duty to honor agreements to arbitrate disputes.  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625 (1985).  The FAA was enacted to reverse "centuries of judicial hostility to arbitration agreements" and "to place arbitration agreements upon the same footing as other contracts."  *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 510–11 (1974) (citation omitted).  The Act accordingly provides that an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The FAA applies to "any maritime transaction or a contract evidencing a transaction involving commerce."  *Id.*; *see*

3

*Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 405 (1967).

In deciding a motion to compel arbitration, the court assesses "whether the parties agreed to arbitrate, and, if so, whether the scope of that agreement encompasses the asserted claims." *David L. Threlkeld & Co., Inc. v. Metallgesellschaft Ltd.*, 923 F.2d 245, 249 (2d Cir. 1991). It then determines "whether one party to the agreement has failed, neglected or refused to arbitrate." *Jacobs v. USA Track & Field*, 374 F.3d 85, 88 (2d Cir. 2004) (citation omitted). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–26 (1983). This "policy in favor of arbitration is even stronger in the context of international business transactions." *Metallgesellschaft Ltd.*, 923 F.2d at 248.

## III.    Discussion

NYK seeks an order, pursuant to the FAA, compelling XCoal to arbitrate this dispute. It also asks the Court to direct XCoal to designate, within seven days of the decision, the one arbitrator whom XCoal is entitled, under the contract, to appoint. In the event XCoal does not, NYK asks the Court to appoint an arbitrator, on XCoal's behalf, from the four-person list NYK has provided. Finally, NYK seeks attorneys' fees and costs related to this lawsuit.

The Court addresses these requests in turn.

### A.    Whether XCoal Must Arbitrate This Dispute

First, NYK and XCoal entered into an agreement to arbitrate this dispute. The October 24, 2024 fixture binds the parties. *See Keystone Shipping Co. v. Compagnie Marocaine de Navigation*, No. 89 Civ. 1028, 1990 WL 104029, at *3 (S.D.N.Y. July 19, 1990) ("It is well established in the Second Circuit that a fixture containing the essential terms of the charter party contract constitutes a binding agreement between the parties."). And the fixture expressly

4

incorporated by reference the YM Pacifico Agreement, which contains an arbitration clause. *See, e.g.*, *Great Circle Lines, Ltd. v. Matheson & Co.*, 681 F.2d 121, 126 (2d Cir. 1982) (compelling arbitration where fixture adopted standard form with arbitration clause); *Crystal Pool AS v. Trefin Tankers Ltd.*, No. 12 Civ. 9417, 2014 WL 1883506, at *3 (S.D.N.Y. May 9, 2014) (same); *Keystone Shipping Co.*, 1990 WL 104029, at *2, 5 (same).

Second, the scope of the arbitration clause covers NYK's claims against XCoal. The clause broadly governs "any dispute or difference [that] should arise under" the parties' agreement. AMWELSH Charter Party at 3 (emphases omitted). This dispute concerns the alleged balance owed by XCoal to NYK for the shipment of coal under the agreement. The broad arbitration clause thus covers NYK's claims. *See, e.g.*, *Crystal Pool AS*, 2014 WL 1883506, at *3 (similar arbitration clause "plainly cover[ed] the parties' dispute over unpaid invoices"); *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 175 (2d Cir. 2004) (similar).

Third, XCoal has "failed, neglected, or refused to arbitrate." *Jacobs*, 374 F.3d at 88. A party "unequivocally refuses to arbitrate . . . by failing to comply with an arbitration demand or by otherwise unambiguously manifesting an intention not to arbitrate the subject matter of the dispute." *LAIF X SPRL v. Axtel, S.A. de C.V.*, 390 F.3d 194, 198 (2d Cir. 2004) (citation omitted). XCoal has not responded to NYK's September 16, 2025 arbitration demand, or to NYK's repeated follow-up communications. And it has not appeared or responded to NYK's petition in this litigation. It thus has both failed to comply with the arbitration demand and "unambiguously manifest[ed] an intention not to arbitrate" this dispute. *LAIF X SPRL*, 390 F.3d at 198; *see, e.g.*, *Crystal Pool AS*, 2014 WL 1883506, at *3 (party refused to arbitrate where it did not respond to arbitration demand or petition to compel arbitration); *Nat'l Union Fire Ins.*

5

*Co. v. Chopper Exp., Inc.*, No. 13 Civ. 3129, 2013 WL 3062533, at *1 (S.D.N.Y. June 19, 2013) (same).

The Court thus compels XCoal to arbitrate this dispute. *See, e.g.*, *Great Circle Lines, Ltd.*, 681 F.2d at 126; *Crystal Pool AS*, 2014 WL 1883506, at *3; *Nat'l Union Fire Ins. Co.*, 2013 WL 3062533, at *1.

### B.    Attorneys' Fees and Costs

NYK also seeks attorneys' fees and costs associated with its petition.

On motions to compel arbitration, courts award fees under their inherent equitable powers "where the party refusing arbitration acted without justification or did not have a reasonable chance to prevail." *Amaprop Ltd. v. Indiabulls Fin. Servs. Ltd.*, No. 10 Civ. 1853, 2011 WL 1002439, at *3 (S.D.N.Y. March 16, 2011) (citation omitted). Here, XCoal did not appear or respond to the petition. It has not articulated any justification for its refusal to arbitrate NYK's claims. And those claims clearly fall within the scope of the broad arbitration agreement between it and NYK, such that XCoal "did not have a reasonable chance to prevail" even had it appeared and opposed the petition. An award of reasonable attorneys' fees is thus warranted. *See, e.g.*, *Sands Bros. & Co. v. Nasser*, No. 03 Civ. 8128, 2004 WL 26550, at *3 (S.D.N.Y. Jan. 5, 2004) (awarding fees where party compelled to arbitrate had not made any colorable argument that it was not bound by arbitration agreement).

As to costs, Federal Rule of Civil Procedure 54 provides that, in the absence of contrary authority, costs "other than attorney's fees" should be awarded to the prevailing party. Fed. R. Civ. P. 54(d)(1). The Court thus authorizes an award of reasonable costs to NYK, the prevailing party here.

## CONCLUSION

For the above reasons, the Court grants NYK's petition to compel arbitration, pursuant to the terms of the binding arbitration agreement. The Court hereby orders as follows: (1) NYK shall serve this decision on XCoal forthwith and, within five days of today, file proof of service on the docket; (2) XCoal shall, within one week of being served with the decision (the "service date"), appoint an arbitrator, pursuant to the arbitration agreement; and (3) NYK shall, within two weeks of the service date, file a status letter informing the Court whether XCoal has appointed an arbitrator and, if not, whether NYK asks the Court to appoint one, pursuant to FAA § 5.

The Court also awards NYK reasonable attorneys' fees and costs associated with this action. NYK shall promptly serve on XCoal, and file on the docket, an itemized accounting of fees and/or costs for which it seeks reimbursement. To the extent XCoal disputes the reasonableness of those figures, it shall, within one week of receiving NYK's itemized accounting, enter a notice of appearance in this case and file a declaration, stating with particularity which fees and/or costs it opposes, and on what basis.

SO ORDERED.

*Paul A. Engelmayer*

PAUL A. ENGELMAYER
United States District Judge

Dated: May 15, 2026
New York, New York

7